A. L. VAN NORMAN *v.* MERIDIAN WATERWORKS CO.

[59 South. 883.]

MUNICIPAL WATER SUPPLY. *Service pipe. Repair. Streets.*

Where a city owns the waterworks supplying water to consumers, in the absence of an ordinance requiring or permitting householders to repair service pipes located in the streets, it is the duty of the city and not of the consumer to repair such pipe.

APPEAL from the circuit court of Lauderdale county. HON. JOHN L. BUCKLEY, Judge.

Suit by A. L. Van Norman against Meridian Waterworks Company. From a judgment for defendant, plaintiff appeals.

The appellant was the owner of certain property in the city of Meridian. Leading from his property into the street were certain water pipes, which connected with the city's mains. These lateral pipes, which belonged to appellee, burst in the street, and the water which leaked from them caused the street to become muddy. The city, without notifying appellant (though the manager of the waterworks testified that he attempted to do so), cut off the water supply to appellant's property. Appellant brought suit against the waterworks company and the city of Merdian, which owned the waterworks, for actual and punitive damages. On the trial the court instructed the jury that it was the duty of the appellant to repair the private service pipe, and that the waterworks company owed the appellant no duty to furnish a supply of water through its pipes until same were repaired, provided the jury believe that appellant knew of their defective condition, or could have known of it by the exercise of due diligence. There was a judgment for the waterworks company and this appeal is prosecuted.

*T. V. Brahan,* for appellant.

The proof showed that these two residences were connected by the same pipe from the defendants mains, onto the plaintiff's lots, and then the pipes "forked," one fork leading to one house, and the other to the other house, and, that in cutting the water off, it cut out the water out of both houses, and if there is any doubt whether Hinton owed any toll at the time the water was cut out, there is none from the deposit slip given Mayer and the receipt given by Mrs. Mayer to the defendant on August 6, 1910 for the refund of her de-

102 Miss.—47

posit of two dollars, and for the sake of argument, conceding that Hinton was in arrears on July 23, 1910, that did not excuse or justify the defendant in cutting out the water of Mayer's. See 87 Miss. p. 732, 40 So. 820; 112 Am. St. Rep. p. 468, 56 So. 450.

The error of the sixth instruction given defendant was in telling the jury that "the defendant owed the plaintiff no duty to notify him that the defendant proposed to cut out the water, provided the jury believe from the evidence that the pipe was burst, and that the water was wasting in the street and the plaintiff had knowledge of the burst condition of the water pipe in controversy; or ought to have had such knowledge by exercising due care and diligence." For the reasons, that the superintendent of the defendant, Wilcox, Gully and Mashburn, the latter a member of the water commission, to whom Van Norman complained about having the water "cut out" and whom he requested to have it "cut in" and who promised to attend to it, all testified, that it was customary to notify the consumer of a burst pipe and give him an opportunity to repair it before cutting out the water, and Wilcox and Gully both testified to making ineffectual efforts to notify the plaintiff beforehand, but admitted they never did succeed in doing so, either personally, or by phone or letter, and that the water was wasting a week before it was cut out, during all of which time, they could have notified plaintiff if they had been diligent and careful of their duties; and for the further reason that the plaintiff never knew before the water was cut out and up to the day of the trial of this case in the circuit court, that the pipe was burst according to his undisputed testimony, and Hinton swore that he never knew it until he returned home after the water was "cut out," and afterwards, learned the cause, but he never knew of the leak in the pipe during the time Wilcox swore it was burst, except that morning he saw water in the street, but even

he did not notify Van Norman. "An instruction is erroneous and should be refused if there be no evidence of which to predicate it." *Patterson* v. *State*, 75 Miss. 670; *Spradley* v. *State*, 80 Miss. 82; *Cooper* v. *State*, 80 Miss. 175; *Rogers* v. *State*, 82 Miss. 479; *Southern Railway Co.* v. *Lanning*, 83 Miss. 161; *Tidwell* v. *State*, 84 Miss. 475; *Canterberry* v. *State*, 90 Miss. 279; *Williams* v. *State*, 90 Miss. 319; *Mobile, etc., Railroad Co.* v. *Jackson*, 92 Miss. 517; *Prince* v. *State*, 93 Miss. 263; *Lewis* v. *State*, 93 Miss. 697; *Easley* v. *Alabama Gt. So. R. R. Co.*, 50 So. 491. Again, it is the province of the jury to decide upon the weight of evidence and an instruction thereon is erroneous. *Coleman* v. *Adair*, 75 Miss. 660; *Fore* v. *State*, 75 Miss. 727; *Tidwell* v. *State*, 84 Miss. 475; *Brister* v. *I. C. R. R. Co.*, 88 Miss. 431; *Hayward* v. *State*, 90 Miss. 461. The defendant undertook to defend its conduct for cutting out the water out of these two residences on account of the burst pipe in the street and on account of arrearages due by Van Norman, and I think I have shown clearly from references to the testimony in this record, and which will appear from a careful reading of it, that neither are tenable.

In the first place, the pipe that was burst was in the street and was not on Van Norman's lots, and there was no duty on him to repair it, it being the recognized duty of the defendant to furnish and keep repaired all pipes to the curbstone of one's property, where the owner of the premises must from that point furnish piping and keep it in repair to his buildings. And, again, Van Norman never knew of the burst pipe and had no opportunity to repair it, which he swore he would have done at a small cost, rather than have been deprived of the water connections for drinking, cooking, bathing and sewer purposes.

In recognition of defendant's duty to notify the consumer of burst pipes before cutting off the water, Wilcox, superintendent, undertook to notify Van Nor-

man, but did not, then instructed Gully, the inspector, whose duty Wilcox swears was to notify him, who also failed to do so, and Mashburn, a member of the water commission, to whom Van Norman complained at once, about cutting off the the water and requested him to "cut it in," and who promised him to have it done, said it was customary to notify the consumer, before cutting him off, of any existing trouble, which was not done.

The court will observe that, notwithstanding the efforts of Van Norman to get the water connections put back for these houses, and the promise of Mashburn and others to have it done, the defendant has wholly failed and refused to do so, and still fails and refuses to this good day to do so—evincing a spirit of malice, or to say the least of it, of great indifference to his conveniences and anoyances, saying nothing of the actual damages he has sustained, including his inability to get desirable tenants.

*V. W. Gilbert,* for appellee.

There was no error in instructing the jury that it was the duty of Van Norman to repair the water lateral, since it was a private service pipe; neither was it error to instruct the jury that it was the duty of the plaintiffs to repair the defects in the pipe if they knew of the defects or ought to have known of the defects by the exercise of due care and diligence. Whether they knew it or ought to have known it was a question for the jury. Men cannot blindfold themselves and then claim they did not see. It was not rainy weather, and the street was flooded with water right in front of plaintiff's door. There are none so blind as those who have had a "rumpus" with some one, as Van Norman said he had had with Wilcox, defendant's manager, and who wear, continuously, litigous chips, like epaulettes, on obstreperous shoulders. He wanted a lawsuit worse than

he wanted water; and although he knew, as any sane man was bound to have known, that the pipe was leaking, and that it had burst; after he had been told that the pipe was. burst; after he had been advised that the water. was cut off, yet he climbs on the witness stand and says that he does not know to this good day whether that pipe was burst or not; never has to this good day proffered to do anything to repair the pipe, which would have cost four or five dollars, as he says, but dug a well which cost him twenty-five dollars, and suffered two thousand dollars worth of damages, as he claims in his declaration, all in order that he might pay a belated tribute to an ancient "rumpus."

Van Norman says that if they had notified him that the pipe was burst before they disconnected him that he would have repaired it, provided they had given him the proper notice; but "I wouldn't have had Wilcox come there and demanded it done." Wilcox was manager; the commissioners as individuals had nothing to do with that sort of thing. He recognized that it was his duty to fix it, and would have done so had he not thought Wilcox, who tried to notify him in person, might have wanted him to do it.

It was also a question for the jury as to whether there were arrears of water rentals. Wilcox testified that the receipt which was made an exhibit, to the testimony was issued through mistake, and demonstrated it from the books of the company. The receipt is not conclusive, and evidence is always admissible to show that a receipt is false, even in cases of warranty deeds. Hinton produced no receipts and the company's books showed no payment. It was then a question for the jury, and the *Ginnings case,* 56 So. 450, has no application.

There was no instruction given for the defendant that was not warranted by the evidence.

Cook, J., delivered the opinion of the court.

The first error manifest in the record is the assumption of appellees that the customer of the city is bound to repair what is termed his "private service pipe." This burst pipe was on the streets of the city. It is not entirely accurate to say that this pipe was the property of the city, but it is wholly wrong to instruct the jury that appellant was under any duty to invade the streets of the city for the purpose of repairing the lateral pipe branching from the main pipe to serve his property. To announce this as a rule of law would necessarily turn over the city streets to every householder receiving water from the waterworks, and would creat inextricable confusion and unlimited trouble. There is no ordinance, so far as the record shows, requiring or permitting householders to repair service pipes located in the streets; and in the very nature of things this sort of ordinance, if adopted, would probably be assaulted as an unreasonable and unworkable regulation. Certainly it is not conceivable that a city would be willing to give to every patron of its water department the privilege to enter upon its streets to repair or install service pipes, when this privilege necessarily involves excavations and tearing up the streets. Throughout the trial this misconception of the law was adopted by the court to estop the defendant to complain of the negligence of the city.

Until an ordinance is adopted requiring householders to keep in repair service pipes located in city streets, we hold that it was the duty of the city to repair the pipe in question. Should an ordinance of this kind come before us for enforcement, quite another question will arise. It is the duty of cities operating waterworks to afford to the people all reasonable facilities for availing themselves of those utilities which contribute so much to the health, comfort, and convenience of all dwellers in cities. Too often just complaints are ignored and the convenience or whim of public servants afford a rule of

action for their government, rather than a prompt, efficient, and cheerful performance of those duties they have been chosen to perform. We do not intimate that the facts of this case warrant the conclusion that the officers in charge of the waterworks of the city of Meridian in this instance were guilty of conduct prescribed in the preceding sentence; but we wish to emphasize our dissent from the position assumed by the appellee in the argument of the present case.

*Reversed and remanded.*